## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADAMILKA SORIANO,** | : | **Civil No. 3:11-CV-2206** |
| | : | |
| **Plaintiff,** | : | **(Judge Mariani)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **COUNTY OF LUZERNE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

This is a *pro se* civil rights action brought by Adamilka Soriano, a woman who was formerly housed in the Luzerne County Prison. (Doc. 1)  Soriano's complaint named one individual defendant, Corrections Officer Anne Wright, and two institutional defendants–Correctional Officer Annie Wright, the County of Luzerne and the Luzerne County Prison. (Id.)  Soriano then recited that she was subjected to what she describes as an unlawful strip search by Correctional Officer Wright on January 20, 2010. (Id.)

While making these specific factual assertions of alleged wrongdoing with respect to the individual defendant named in her complaint, as to the institutional defendants Soriano simply alleged that: "The Luzerne County Correctional facility was negligent in allowing this type of behavior, . . . and for not taking action against said employees who do not follow proper procedure. Luzerne County Correctional

Facility is also negligent in the lack of training of their employee. . . ." (Id., ¶2.)  As to the County of Luzerne, the allegations set forth in Soriano's complaint are even more spare.  She simply asserts that:  "The County of Luzerne is negligent in their operations and overseeing the conduct and hiring and training policies of the Luzerne County Correctional facility." (Id., ¶3.)

Along with this complaint, the plaintiff filed a motion for leave to proceed *in forma pauperis*. (Doc. 2)  On January 3, 2012, we granted this motion for leave to proceed *in forma pauperis* (Doc. 2) but recommended that the Court dismiss the complaint as to the institutional defendants for failure to presently state a claim upon which relief can be granted, without prejudice to allowing the plaintiff to attempt to correct the deficiencies noted in this report and recommendation by filing an amended complaint. (Doc. 10)  The District Court adopted this report and recommendation on February 6, 2012, and dismissed the complaint as to the institutional defendants for failure to presently state a claim upon which relief can be granted, without prejudice to allowing the plaintiff to attempt to correct the deficiencies noted in this report and recommendation by filing an amended complaint, provided that Soriano filed an amended complaint on or before February 27, 2012. (Doc. 13)

This deadline has passed without action by Soriano.  Accordingly, for the reasons set forth below, it is now recommended that the complaint as to these institutional defendants be dismissed with prejudice.

## II.     Discussion

### A.     Soriano's Complaint Still Fails to State a Claim Against the Institutional Defendant Luzerne County and Luzerne County Prison

In this case we are presented with a litigant who has failed to abide by a court order and file a timely amended complaint after her initial complaint was found to be wholly deficient as to the institutional defendants named in that complaint.  This procedural default now compels the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system.  A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever

possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id.  Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

This principle applies with particular force here, since Soriano's initial *pro se* complaint still fails to state a claim upon which relief can be granted with respect to these institutional defendants.  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the

light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. at 1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' <u>Iqbal</u>, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' <u>Id.</u> at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' <u>Id.</u>" <u>Santiago v. Warminster Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Applying these standards, we find that with respect to the institutional defendants named in this pleading the complaint remains subject to summary dismissal. To the extent that Soriano seeks to hold governmental agencies like Luzerne County and the Luzerne County Prison liable for alleged civil rights violations, she must meet an exacting burden of pleading and proof. It is well-settled that local governmental entities may not be held liable under § 1983 for the acts of others under a theory of *respondeat superior* or vicarious liability. Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1948 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991). Instead, such an agency may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Thus, to sustain a claim like the claim that Soriano has advanced against these institutional defendants, a plaintiff must "identify a . . . 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." Id. at 404; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a

practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted).

The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404).   A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .'" Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted).  There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'"  Id. at 325 (citations omitted).   Therefore, analysis of a claim under Monell requires separate analysis of two distinct issues:  "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation."  Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992).

An institutional defendant may also be liable for constitutional violations resulting from inadequate training or supervision of its employees if the failure to train amounts to a custom of the municipality.  However, failure-to-train claims also must meet precise and demanding legal criteria.  Such a failure must "amount[] to deliberate indifference to the constitutional rights of persons with whom the police come in

contact." Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Proving agency liability on a theory of deliberate indifference is an especially difficult showing for a plaintiff to satisfy where the plaintiff has alleged that insufficient training or supervision has caused constitutional violations. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). Such a showing requires that "(1) . . . lawmakers know that employees will confront a similar situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999). Moreover, the plaintiff proceeding on such a theory must establish that the agency's "deliberate conduct . . . was the 'moving force' behind the injury alleged." Reitz, 125 F.3d at 145 (quoting Brown, 520 U.S. at 404). Therefore, the need for training, supervision, or other corrective action to avoid imminent deprivations of a constitutional right "must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." Horton v. City of Harrisburg, No. 06-2338, 2009 U.S. Dist. LEXIS 63428, *13 (M.D. Pa. July 23, 2009) (quoting Strauss v. Walsh, No. Civ. A. 01-3625, 2002 U.S. Dist. LEXIS 24717, 2002 WL 32341791, at *3 (E.D. Pa. Dec. 17, 2002)). Additionally, in order to recover for municipal liability on a failure-to-train theory, the alleged failure must be "closely related to the ultimate (constitutional) injury." Woloszyn, 396 F.3d at 325.

The Supreme Court has recently reaffirmed the guiding principles which define institutional civil rights liability based upon a failure to train or oversee law enforcement officers.   In <u>Connick v. Thompson</u>, – U.S.– , 131 S.Ct. 1350, 1359 (2011), the Court described the parameters of agency liability in the following terms:

> A municipality or other local government may be liable . . .if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. <u>See</u> <u>Monell v. New York City Dept. of Social Servs</u>., 436 U.S. 658, 692 (1978). But, under § 1983, local governments are responsible only for "their *own* illegal acts." <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 479(1986) . . . . They are not vicariously liable under § 1983 for their employees' actions. . . . Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. <u>Monell</u>, 436 U.S., at 691. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. . . . . These are "action[s] for which the municipality is actually responsible." <u>Pembaur, supra</u>, at 479–480.   In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. <u>See</u> <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in <u>Monell</u> "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." . . . . Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983. . . . " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . . Thus, when city policymakers are on actual or constructive

-11-

notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.

Id.(some citations deleted).

Here, Soriano's complaint simply does not make any allegations which would permit a finding of institutional liability against the Luzerne County Prison or Luzerne County. Soriano simply asserts that these institutional defendants were "negligent" an allegation which falls far short of what is required in this setting for agency civil rights liability. She does not allege that the institutional defendants had a custom or policy of violating his rights. Nor has Soriano alleged facts that would permit a finding of institutional liability on a failure-to-train theory since her claims of negligence simply do not allege well-pleaded facts which would permit an inference that the agency's failure to train "amount[ed] to deliberate indifference to the constitutional rights of persons with whom the [correctional officer] c[a]me in contact." Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Therefore, in their current form, Soriano's claims against these institutional defendants fail as a matter of law.

Having conducted this screening analysis and determined that Soriano's complaint is still wanting as to the institutional defendants named in this pleading, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an

-12-

opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>See Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). With respect to the institutional defendants named in this complaint, in this case the Court has previously provided the plaintiff with an opportunity to amend these pleadings, but to no avail. The current complaint still fails to state a viable civil rights cause of action against these defendants. Since the plaintiff has been afforded an opportunity to correct the deficiencies identified in her complaint with respect to these defendants, has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the second amended complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed as to defendants Luzerne County Prison or Luzerne County without further leave to amend.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint should be dismissed with prejudice as to defendants

Luzerne County Prison or Luzerne County, but the complaint should be served as to the individual defendant named in that complaint, defendant Wright.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of March 2012.

> _S/Martin C.  Carlson_
> Martin C. Carlson
> United States Magistrate Judge