# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADAMILKA SORIANO,** | : | **Civil No. 3:11-CV-2206** |
| | : | |
| **Plaintiff,** | : | **(Judge Mariani)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **COUNTY OF LUZERNE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

This *pro se* civil rights action was first brought by Adamilka Soriano, a woman who was formerly housed in the Luzerne County Prison, almost one year ago, on November 29, 2011. (Doc. 1.) Soriano's complaint named one individual defendant, Corrections Officer Anne Wright, and two institutional defendants–Correctional Officer Annie Wright, the County of Luzerne and the Luzerne County Prison. (Id.) Soriano then recited that she was subjected to what she described as an unlawful strip search by Correctional Officer Wright on January 20, 2010. (Id.) While making these assertions of alleged wrongdoing with respect to the individual defendant named in her complaint, as to the institutional defendants Soriano simply alleged that: "The Luzerne County Correctional facility was negligent in allowing this type of behavior, . . . and for not taking action against said employees who do not follow proper procedure.  Luzerne County Correctional Facility is also negligent in the lack of

training of their employee. . . ." (<u>Id.</u>, ¶2.) As to the County of Luzerne, the allegations set forth in Soriano's complaint are even more spare. She simply asserts that: "The County of Luzerne is negligent in their operations and overseeing the conduct and hiring and training policies of the Luzerne County Correctional facility." (<u>Id.</u>, ¶3.)

Along with this complaint, the plaintiff filed a motion for leave to proceed *in forma pauperis*. (Doc. 2.) On January 3, 2012, we granted this motion for leave to proceed *in forma pauperis* (Doc. 2.) but recommended that the Court dismiss the complaint as to the institutional defendants for failure to state a claim upon which relief can be granted, without prejudice to allowing the plaintiff to attempt to correct the deficiencies noted in this report and recommendation by filing an amended complaint. (Doc. 10.) The District Court adopted this report and recommendation on February 6, 2012, and dismissed the complaint as to the institutional defendants for failure to presently state a claim upon which relief can be granted, without prejudice to allowing the plaintiff to attempt to correct the deficiencies noted in this report and recommendation by filing an amended complaint, provided that Soriano filed an amended complaint on or before February 27, 2012. (Doc. 13.) This deadline passed without any action by Soriano, who has generally neglected her duty to litigate this case for the past 11 months. Accordingly, this civil rights action was dismissed with prejudice as to the institutional defendants on March 29, 2012. (Doc. 16.)

Thus, for the past seven months only the individual defendant, Officer Wright, has remained in this action. Moreover, since filing this action in November of 2011, Soriano has taken no steps to prosecute this case. She has not responded to Reports and Recommendations filed by this Court; she has not filed pleadings in this matter; and she has not responded to a defense motion to dismiss filed on behalf of defendant Correctional Officer Wright.

These failures to act are particularly puzzling since at the time that she filed this *pro se* complaint, Soriano received a copy of this Court's Standing Practice Order, an order which informed the plaintiff of her responsibility to reply to defense motions, and warned Soriano in clear and precise terms of the consequences which would flow from a failure to comply with briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion. The motion may therefore be granted if: (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 5, p.3.)

On October 24, 2012, defendant Wright filed a motion to dismiss this complaint and brief. (Docs. 28-30.) On October 26, 2012, we then ordered Soriano to respond to this motion on or before November 8, 2012. (Doc. 31.) Despite having been ordered to respond to this motion in a timely fashion, the deadline for the plaintiff's

motion response has now passed, and it appears that Soriano has violated this Court's Standing Practice Order and our briefing order by failing to respond to the motion. Since the motion response deadline for this motion prescribed by the Court has now passed without any action on the plaintiff's part, the motion is now deemed ripe for resolution.

For the reasons set forth below, it is recommended that the motion to dismiss should be granted.

## II.  Discussion

### A.  Under The Rules of This Court The Plaintiff Should Be Deemed to have Abandoned This Case

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in these motions, since Soriano has failed to timely oppose the motion, or otherwise litigate this case. These procedural defaults completely frustrate and impede efforts to resolve this matter in a timely and fair fashion, and under the rules of this Court warrants dismissal of these claims, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not*

*to oppose such motion.* Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (1991)." <u>Williams v. Lebanon Farms Disposal, Inc.</u>, No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case Soriano has not complied with the Local Rules, or this Court's orders, by filing a timely response to this motion, or otherwise litigating this case for the past year. On these facts, the plaintiff's procedural defaults compel the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. <u>See</u> Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and

impose the sanctions mandated by those rules when the rules are breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id. Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed comply with this Court's orders, and has neglected to comply with Local Rule 7.6 by filing a timely response to a motion to dismiss filed by the defendants. These cumulative failures now compel us to apply the sanction called for under the Local Rules and deem the plaintiff to not oppose the motion to dismiss.

**B.** **Dismissal of this Case Is Also Warranted Under Rule 41**.

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court, and will not be disturbed absent

an abuse of that discretion. <u>Emerson v. Thiel College</u>, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That discretion, however, while broad, is governed by certain factors, commonly referred to as <u>Poulis</u> factors.  As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. <u>Poulis v. State Farm Fire and Cas. Co.</u>, 747 F.2d 863, 868 (3d Cir.1984).

<u>Emerson</u>, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." <u>Lopez v. Cousins</u>, No. 10-1877,  2011 WL 2489897, *3 (3d Cir. June 23, 2011)(quoting <u>Briscoe v. Klem</u>, 538 F.3d 252 (3d Cir. 2008))  Therefore, "[i]n balancing the <u>Poulis</u> factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case. <u>Mindek v. Rigatti</u>, 964 F.2d 1369, 1373 (3d Cir.1992)." <u>Briscoe v. Klaus</u>,  538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors

need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. However, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders and has neglected to litigate this case for the past year.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration. As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in
> support of a dismissal or default judgment." Adams v. Trustees of N.J.

Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222. Oftentimes, this type of prejudice involves disputes between the parties on discovery matters because the defendants were deprived of necessary information or had to expend costs to obtain court orders for compliance. See, e.g., Poulis, 747 F.2d at 868 (finding that the defendants were prejudiced where the plaintiffs did not answer interrogatories, the defendants had to file a motion to compel the plaintiffs' answers, and the defendant had "to file its pre-trial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first"); Ware, 322 F.3d at 220-23 (affirming the District Court's conclusion that a defendant had been prejudiced where the plaintiff repeatedly ignored the defendant's discovery request for the plaintiff's computation of damages and did not provide it until one week prior to trial).

Briscoe v. Klaus, 538 F.3d at 259-60.

In this case, the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action. In such instances, dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National

Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  In this regard, while it is evident that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874; [it is also clear that] conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness.'" Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted).  Here, since filing her complaint in November of 2011, almost one year ago, the plaintiff has failed to timely file pleadings, and has not complied with orders of the Court.  Thus, Soriano's conduct now begins to display "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff.  In this setting we must assess whether this inaction reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence.  Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994).

At this juncture, when the plaintiff failed in this case to comply with instructions of the Court directing her to take specific actions in this lawsuit, and has violated court orders and the Local Rules, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. <u>See, e.g.</u>, <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the plaintiff on her obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores her responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under <u>Poulis</u> we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this

factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with her obligations as a litigant. The plaintiff cannot refuse to cooperate with this litigation, which would address the merits of these claims, and then assert the untested merits of these claims as grounds for denying a motion to dismiss. In any event, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot defeat this motion.

More fundamentally, as discussed below, Soriano's claims against defendant Wright now fail as a matter of law, yet another factor which favors dismissal of this action. The legal flaws inherent this particular claim are discussed below.

This lawsuit arises out of an alleged strip search of Soriano conducted by Officer Wright at the Luzerne Count Prison on January 20, 2010. In the course of this search Officer Wright discovered 51 baggies, containing 2.5 grams of heroin, concealed by the plaintiff in a body cavity. (Docs. 28-20.) It appears that Soriano was charged locally with introducing drugs into the prison as a result of this incident, and agreed to plead guilty to this charge. (Id.)

On these undisputed facts, defendant Wright has now filed a motion to dismiss this complaint, alleging that it fails to state a claim upon which relief may be granted.

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic</u>

Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

<u>Fowler</u>, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' <u>Iqbal</u>, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' <u>Id.</u> at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' <u>Id</u>." <u>Santiago v. Warminster Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Here, Soriano's complaint against Officer Wright is premised upon the assertion that the officer violated her constitutional rights when she conducted an intake strip search of the plaintiff at the Luzerne County Prison. Soriano's complaint fails because the premise behind the complaint–that prison officials are forbidden from conduct strip searches of incoming inmates– is fundamentally flawed. Indeed, the United States Supreme Court has recently expressed rejected the claim that prison strip search policies that require strip searches of newly arrested detainees infringe on the constitutional rights of detainees like Soriano. In terms that are equally applicable here the Court observed that:

The question here is whether undoubted security imperatives involved in jail supervision override the assertion that some detainees must be exempt from the more invasive search procedures at issue absent reasonable suspicion of a concealed weapon or other contraband. The Court has held that deference must be given to the officials in charge of the jail unless there is "substantial evidence" demonstrating their response to the situation is exaggerated. Block, 468 U.S., at 584–585, 104 S.Ct. 3227 (internal quotation marks omitted). Petitioner has not met this standard, and the record provides full justifications for the procedures used.

Correctional officials have a significant interest in conducting a thorough search as a standard part of the intake process. The admission of inmates creates numerous risks for facility staff, for the existing detainee population, and for a new detainee himself or herself. The danger of introducing lice or contagious infections, for example, is well documented. See, e.g., Deger & Quick, The Enduring Menace of MRSA: Incidence, Treatment, and Prevention in a County Jail, 15 J. Correctional Health Care 174, 174–175, 177–178 (2009); Bick, Infection Control in Jails and Prisons, 45 Healthcare Epidemiology 1047, 1049 (2007). The Federal Bureau of Prisons recommends that staff screen new detainees for these conditions. See Clinical Practice Guidelines, Management of Methicillin–Resistant *Staphylococcus aureus* (MRSA) Infections 2 (2011); Clinical Practice Guidelines, Lice and Scabies Protocol 1 (2011). Persons just arrested may have wounds or other injuries requiring immediate medical attention. It may be difficult to identify and treat these problems until detainees remove their clothes for a visual inspection. See Prison and Jail Administration: Practice and Theory 142 (P. Carlson & G. Garrett eds., 2d ed.2008) (hereinafter Carlson & Garrett).

Jails and prisons also face grave threats posed by the increasing number of gang members who go through the intake process. See Brief for Policemen's Benevolent Association, Local 249, et al. as *Amici Curiae* 14 (hereinafter PBA Brief); New Jersey Comm'n of Investigation, Gangland Behind Bars: How and Why Organized Criminal Street Gangs Thrive in New Jersey's Prisons ... And What Can Be Done About It 10–11 (2009). "Gang rivalries spawn a climate of tension, violence, and coercion." Carlson & Garrett 462. The groups recruit new members by force, engage in assaults against staff, and give other inmates a reason to

arm themselves. *Ibid.* Fights among feuding gangs can be deadly, and the officers who must maintain order are put in harm's way. PBA Brief 17. These considerations provide a reasonable basis to justify a visual inspection for certain tattoos and other signs of gang affiliation as part of the intake process. The identification and isolation of gang members before they are admitted protects everyone in the facility. Cf. <u>Fraise v. Terhune</u>, 283 F.3d 506, 509–510 (C.A.3 2002) (Alito, J.) (describing a statewide policy authorizing the identification and isolation of gang members in prison).

Detecting contraband concealed by new detainees, furthermore, is a most serious responsibility. Weapons, drugs, and alcohol all disrupt the safe operation of a jail. Cf. <u>Hudson</u>, 468 U.S., at 528, 104 S.Ct. 3194 (recognizing "the constant fight against the proliferation of knives and guns, illicit drugs, and other contraband"). Correctional officers have had to confront arrestees concealing knives, scissors, razor blades, glass shards, and other prohibited items on their person, including in their body cavities. See <u>Bull,</u> 595 F.3d, at 967, 969; Brief for New Jersey County Jail Wardens Association as *Amicus Curiae* 17–18 (hereinafter New Jersey Wardens Brief). They have also found crack, heroin, and marijuana. Brief for City and County of San Francisco et al. as *Amici Curiae* 9–11 (hereinafter San Francisco Brief). The use of drugs can embolden inmates in aggression toward officers or each other; and, even apart from their use, the trade in these substances can lead to violent confrontations.

<u>Florence v. Bd. of Chosen Freeholders of County of Burlington</u>, 132 S. Ct. 1510, 1518-19 (2012).

Soriano's case presents a paradigm of the institutional concerns that led the Supreme Court to approve general prison intake strip search policies. On January 20, 2010, Soriano endeavored to smuggle heroin into the prison. "The use of [such] drugs can embolden inmates in aggression toward officers or each other; and, even apart from their use, the trade in these substances can lead to violent confrontations." <u>Id</u>.

Therefore, Soriano's conduct, which violated prison rules and state law, threatened institutional order, legally justified the intake search of this detainee, and highlighted in a particularly compelling way why such searches are neecssary in a custodial setting.

Finally, we find that, even if Soriano had stated a colorable claim, defendant Wright would nevertheless be entitled to qualified immunity from these claims for damages. In order to establish a civil rights claim Soriano must show the deprivation of a right secured by the United States Constitution or the laws of the United States. Satisfying these elements alone, however, does not guarantee that Soriano is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity:

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a

mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson,555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. Saucier, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. 231-32; Saucier, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." Wilson, 526 U.S. at 615. The Supreme Court has explained that, at least in some cases, "a general constitutional rule

already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)). In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 236, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).") Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's

conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. <u>See</u> <u>Montanez v. Thompson</u>, 603 F.3d 243 (3d Cir. 2010).

In this case, the Supreme Court has now expressly approved inmate prison intake strip searches, <u>Florence v. Bd. of Chosen Freeholders of County of Burlington</u>, 132 S. Ct. 1510, 1518-19 (2012), and case law preceding the Supreme Court's decision in <u>Florence</u> had noted that officers conducting such strip searches in a jail or police station were entitled to qualified immunity from damages claims. <u>Burke v.</u> <u>Twp. of Cheltenham</u>, 742 F. Supp. 2d 660, 677 (E.D. Pa. 2010). Given the state of the law in this field, defendant Wright simply could not have recognized that her actions would violate "clearly established statutory or constitutional right[] of which a reasonable person would have known." <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999). Therefore, the defendant is entitled to qualified immunity on these claims.

Thus, an analysis this final <u>Poulis</u> factor–the meritoriousness of the plaintiff's claims–reveals that the plaintiff's assertions against defendant Wright in this complaint fail to allege a colorable claim under the Constitution or laws of the United States. Given the legal bankruptcy of these claims, we find that all of the <u>Poulis</u> factors call for dismissal of this case.

Having concluded that this *pro se* complaint is flawed in multiple and profound ways, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded

an opportunity to amend a complaint before the complaint is dismissed in its entirety,
see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir.
2007), unless it is clear that granting further leave to amend would be futile, or result
in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the
current complaint fails to state a viable civil rights cause of action, the factual and
legal grounds proffered in support of this complaint make it clear that he has no right
to relief, and the plaintiff has declined to respond to court orders, or otherwise litigate
these claims. On these facts, we conclude that granting further leave to amend would
be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).
Therefore, it is recommended that the complaint be dismissed as to all defendants
without further leave to amend.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the
defendant's motion to dismiss (Doc. 28.), be GRANTED, and the plaintiff's complaint
be DISMISSED without further leave to amend.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in 28
U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition
of a prisoner case or a habeas corpus petition within fourteen (14) days
after being served with a copy thereof. Such party shall file with the clerk
of court, and serve on the magistrate judge and all parties, written

objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 13th day of November 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge